UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:17-CR-00612-RLW-SPM-1 |
| v. ) | |
| ) | |
| DONALD CRANGLE, ) | |
| ) | |
| Defendant. ) | |

**MOTION TO DISMISS COUNTS ONE, TWO, AND THREE**

Defendant Donald Crangle ("Crangle"), by and through his undersigned counsel, Justin K. Gelfand and the law firm of Margulis Gelfand, LLC, respectfully moves this Court to dismiss Counts 1, 2, and 3 of the indictment pursuant to Federal Rule of Criminal Procedure ("Rule") 12(b)(3) for failure to state an offense.

These three counts allege that Crangle—on three specific dates on which the Government purportedly deposited payments into his bank account—did "embezzle, steal, purloin, and knowingly convert to his use, and the use of others, money of the United States or of any department or agency thereof...that being, Social Security disability payments...All in violation of Title 18, United States Code, Section 641." (Doc. 1). However, even accepting the Government's allegations as true (for the limited purposes of this motion), the conduct alleged does not, as a matter of law, constitute a violation of 18 U.S.C. § 641. As such, this Court should dismiss Counts 1, 2, and 3 of the indictment.

**I.     Background**

On December 20, 2017, Crangle was charged in an indictment with eight counts. (Doc. 1). The indictment alleges that in November 2003, Crangle became eligible for Social Security

disability ("SSD") payments. (*Id.* at ¶ 8). The indictment then alleges in Counts 1, 2, and 3, that on January 9, 2013, February 13, 2013, and March 13, 2013, respectively, Crangle embezzled, stole, purloined, and knowingly converted to his use, Social Security disability payments in the amount of $1,015.00 on each date in violation of 18 U.S.C. § 641. (*Id.*). Review of the discovery disclosed by the Government reveals that these three dates represent the dates that payments were direct-deposited into Crangle's bank account via ACH transfer by the Social Security Administration ("SSA"). On these three dates, the SSA had not started any investigation into Crangle's eligibility to receive these payments and had certainly not initiated any procedure for terminating Crangle's eligibility for SSD payments.

**II.     Argument**

This Court should dismiss Counts 1, 2, and 3 of the indictment, pursuant to Rule 12(b)(3)(B)(v), as each of these counts fails to state an offense. Stated simply, Crangle cannot possibly be guilty of embezzling, stealing, purloining, or converting these SSD payments because the payments were deposited into his account, in his name, and on the dates the payments were deposited, Crangle was eligible to receive them. In these counts, the Government's theory appears to be that Crangle—despite being medically disabled and eligible for SSD—had earnings that were too high during these three specific months, thus making him at least theoretically ineligible to receive SSD for those months. However, on the dates that these payments were deposited into Crangle's account, he was eligible to receive them because the SSA had not initiated any process for terminating his eligibility. In short, on the dates alleged in the indictment, this money belonged to Crangle and, therefore, he cannot possibly be guilty of stealing it. As such, even accepting the Government's allegations as true, 18 U.S.C. § 641 does not apply to this situation and, thus, this Court should dismiss Counts 1, 2, and 3.

To obtain a conviction at trial for theft of government property, the government must prove beyond a reasonable doubt that Crangle: "(1) voluntarily, intentionally, and knowingly stole or converted money to his own use or to the use of another; (2) acted with the intent to deprive the owner of the use or benefit of the money so taken; and (3) the money belonged to the United States and had a value in excess of one thousand dollars ($1,000)." *United States v. McCorkle*, 688 F.3d 518, 521, n.3 (8th Cir. 2012).

The allegations fail to establish that Crangle "stole or converted money to his own use." *Id.* Instead, the allegations demonstrate that the United States deposited money into Crangle's bank account, in Crangle's name (as the SSA had done on a monthly basis since November 2003), and prior to initiating any procedure for terminating Crangle's eligibility to receive these payments. Crangle cannot have stolen or converted money that was deposited into his account at a time when he was entitled to it, and he cannot have deprived an owner of the use or benefit of the money when he was that owner. Accordingly, Counts 1, 2, and 3 fail, as a matter of law, to state an offense.

The Government must establish that the money deposited into Crangle's account belonged to the United States. *Id.* While the Government regularly charges individuals with theft under 18 U.S.C. § 641 for alleged wrongful receipt of SSD, the case at bar is distinguishable and research has not revealed an instance where a defendant made the argument advanced here by Crangle.

In *Mathews v. Eldridge*, an individual whose SSD benefits had been terminated brought an action challenging the constitutional validity of the administrative procedures established for assessing whether there exists a continuing disability. *Mathews v. Eldridge*, 424 U.S. 319 (1976). There, the United States Supreme Court explained, "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 332. The

3

Government acknowledged that procedural due process rights apply to terminations of SSD payments. *Id.* The Government also recognized that "the interest of an individual in continued receipt of these benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Id.*

The *Eldridge* Court noted, "[t]his Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333. The Court continued, the "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Id.* (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168 (1951)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.*

Having determined that procedural due process rights apply to the termination of SSD payments, the *Eldridge* Court then analyzed the procedures for the termination of SSD payments and then considered the constitutional adequacy of these procedures. *Id.* at 336. The Court noted, "[t]he principal reasons for benefits terminations are that the worker is no longer disabled or has returned to work." *Id.* In *Eldridge*, SSD payments had been terminated due to a determination that the individual was no longer disabled. As such, the Court specifically considered the sufficiency of the procedures in such cases. *Id.* While the procedures involved in terminating benefits due to a person no longer being disabled are somewhat distinct from those involved in terminating benefits due to a person's return to work, the Court noted, "[t]hey are similar, however, in the important respect that the process relies principally on written communications and there is no provision for an evidentiary hearing prior to the cutoff of benefits." *Id.* at n.15.

The *Eldridge* Court then, in great detail, explained the administrative processes that are

4

conducted by the SSA prior to terminating an individual's SSD payments. *Id.* at 337-39. The procedures involve: periodic questioning of the recipient; obtaining medical records; notification to the recipient that their SSD payments may be terminated; an opportunity to respond and to submit additional evidence; a final determination and notification to the recipient that he or she has the right to seek review; if the recipient seeks review and the determination is adverse, the SSA reviews the reconsideration determination and notifies the recipient of the decision; the recipient then has the right to an evidentiary hearing before an SSA administrative law judge; if the hearing results in an adverse decision, the recipient is entitled to request discretionary review by the SSA Appeals Council; and finally, the recipient may obtain judicial review. *Id.*

Stated simply, an individual who receives SSD payments is entitled to *extensive* procedures prior to there being a determination that he or she is not entitled to payments. Because of the extensive administrative procedures built into the law, the *Eldridge* Court concluded, "the present administrative procedures fully comport with due process." *Id.* at 349.

Because the Government had not, as of the three dates alleged in the indictment, conducted any of administrative procedures to determine whether Crangle was entitled to SSD payments, Crangle remained eligible, on those dates, for those payments. Contrary to what the Government alleges, on January 9, 2013, February 13, 2013, and March 13, 2013, Crangle remained eligible for SSD as the payments had not yet been terminated and, therefore, he cannot be guilty of stealing Government property on those dates. If the Government, at some later date, ultimately determined—after following prescribed administrative procedures—that Crangle was not eligible for SSD payments on those dates, "the statute authorizes the [SSA] to attempt to recoup these funds in specified circumstances." *Id.* at 339 (citing 42 U.S.C. § 404 and 20 C.F.R. § 404.515). However, it is inescapable that Crangle cannot possibly be guilty of "stealing" money that had

been paid to him on a monthly basis for nearly a decade prior to there being any determination that he was ineligible to receive these funds. To determine otherwise would constitute a blatant violation of his procedural due process rights. *See Eldridge*, 424 U.S. at 333.

The Government's allegations in this case are that on the very days that the Government deposited money into Crangle's account, he had "stolen" it. However, as of the dates alleged in the indictment, the Government had done nothing at all, procedurally, to determine that Crangle was not eligible for SSD on those dates. As such, Crangle was unambiguously entitled to the SSD payments on the dates alleged and cannot possibly be guilty of stealing those funds on those dates.

The Government's position appears to be that, in hindsight, the Government should not have paid Crangle his SSD benefits on those three dates. However, Crangle has not been charged with fraudulently inducing these payments—and this is likely because that would be time barred by the statute of limitations. Instead, the Government is trying to convert the allegations in this case into an 18 U.S.C. § 641 case but the allegations simply do not support it. On January 9, 2013, February 13, 2013, and March 13, 2013, Crangle cannot possibly, as a matter of law, have stolen money from the United States. By criminalizing the receipt of SSD payments based on an *ex post facto* determination of ineligibility without meeting the due process demands outlined in *Eldridge*, the Government is attempting to circumvent binding United States Supreme Court precedent.

### III.   Conclusion

Because the Government deposited payments into Crangle's account, in Crangle's name, at a time when Crangle was still entitled to the payments, Crangle cannot, as a matter of law, be guilty of violating 18 U.S.C. § 641. As such, Crangle respectfully requests that this Court dismiss Counts 1, 2, and 3 of the indictment.

6

Respectfully submitted,

**Margulis Gelfand, LLC**

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND
ATTORNEY FOR DEFENDANT
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the United States of America and Assistant United States Attorney Tracy L. Berry.

Respectfully submitted,

**Margulis Gelfand, LLC**

/s/ *Justin K. Gelfand*
JUSTIN K. GELFAND
ATTORNEY FOR DEFENDANT
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0230
Facsimile: 314.485.2264
justin@margulisgelfand.com