UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. S2 4:17CR612RLW(SPM) |
|  | ) |  |
| DONALD CRANGLE | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum Opinion filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motions to Dismiss Count 4 of the Second Superseding Indictment (Docs. 77 & 78) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Counts 4-9 of the Second Superseding Indictment (Doc. 79) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Counts 1-3 of the Second Superseding Indictment (Doc. 80) be **DENIED.**

**IT IS FINALLY RECOMMENDED** that Defendant's Motion to Strike Surplasage from Count 4 of the Second Superseding Indictment (Doc. 81) be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set before the **Honorable Ronnie L. White** on **March 4, 2019, at 9 a.m.**

                                                              /s/ Shirley Padmore Mensah
                                                              SHIRLEY PADMORE MENSAH
                                                              UNITED STATES MAGISTRATE JUDGE

Dated January 8, 2019.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. S2-4:17CR612RLW(SPM) |
| ) | |
| DONALD CRANGLE ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION**

This matter was referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to 28 U.S.C. §636(b).

**PROCEDURAL BACKGROUND**

On December 20, 2017, Defendant Donald Crangle was charged in an indictment with eight counts. *See* Doc. 2 (Redacted Indictment). Counts one through three charged theft of government funds in violation of 18 U.S.C. § 641, and counts four through eight charged making false statements in violation of 18 U.S.C. § 1001(a). *See id*. On August 29, 2018, the United States sought, and the grand jury returned, a superseding indictment which charged Crangle with violating the same statutes as the original indictment but made changes to the allegations made in the original indictment. *See* Doc. 55 (Redacted Superseding Indictment). Crangle was arraigned on the superseding indictment on September 7, 2018. At the arraignment, defense counsel requested additional time to file or waive pretrial motions.

On September 27, 2018, the United States sought, and the grand jury returned, a second superseding indictment. *See* Doc. 64 (Redacted Second Superseding Indictment). The second superseding indictment added a new count four alleging that Crangle made a false statement and used a false document in violation of 18 U.S.C. § 1001(a). The counts previously numbered as counts four

through eight became counts five through nine in the second superseding indictment. Crangle was arraigned on the second superseding indictment on October 11, 2018. Defense counsel requested, and was granted, time to file pretrial motions. On November 1, 2018, Crangle filed two motions to dismiss count four on the grounds that the document at issue in count four is fundamentally ambiguous (Doc. 77) and that prosecuting Crangle based on the document at issue in count four violates due process (Doc. 78). Crangle also filed a motion to dismiss counts four through nine on duplicity grounds (Doc. 79); a motion to dismiss counts one through three based on the statute of limitations (Doc. 80); and a motion to strike surplasage (Doc. 81). On November 6, 2018 and November 8, 2018, the United States filed responses opposing each of Crangle's motions. *See* Docs. 85, 96, 87, 88, 89 & 90.

On November 30, 2018, the undersigned held a hearing on Crangle's pretrial motions. Crangle was present with counsel, and the United States was represented by Assistant United States Attorney Tracy Berry. The parties indicated that they did not believe an evidentiary hearing was necessary and offered no evidence beyond the exhibits attached to their respective briefs. The undersigned heard oral arguments from counsel for both parties and took Crangle's pretrial motions under submission at the close of the hearing.

After carefully considering the written submissions of the parties, the arguments of counsel at the hearing, and the record as a whole, I make the following findings of facts and conclusions of law.

**I. MOTIONS TO DISMISS COUNT 4 (DOCS. 77 & 78)**

Crangle has moved for dismissal of Count Four of the Second Superseding Indictment. *See* Docs. 77 & 78. Count Four of the Second Superseding Indictment alleges that on October 31, 2013, Crangle made false statements to the Social Security Administration in a document entitled "Second Request Disability Update Report" (the "Update Report"). *See* Doc. 64. Specifically, Count Four alleges that, in violation of 18 United States Code, Section 1001(a), on the Update Report, Crangle:

did state and represent and cause to be stated and represented that since June 2011 he had been self-employed, those dates being between April 2012 and March 2013, and earned $940.00 per month and that his doctor told him he could not work, when in truth and in fact, as defendant [Crangle] well knew, he taught Concealed Carry Weapons classes beginning as early as August 1, 2009, his monthly earnings between April 2012 and March 2013 exceeded $940.00, and he lost his accreditation to teach the Concealed Carry Weapons classes in March 2013.

Doc. 64.

Crangle contends Count Four is facially defective and fundamentally unfair because it is premised on his responses to questions in the Update Report that are "fundamentally ambiguous" and "literally impossible to answer truthfully." *See id.* Docs. 77 & 78. The questions at the heart of Crangle's motion to dismiss are contained in question 1.b. of the Update Report, which requires the respondent to state the month and year "work began" the month and year "work ended" and "monthly earnings" between June 2011 and October 28, 2013. *See* Exh. 1 to Docs. 77 & 78 (Docs. 77-1 & 78-1).

An image of the relevant portion of the Update Report filled out by Crangle is reflected in Figure 1, below:

Figure 1

Please be sure to use black ink or a #2 pencil to print your answers. Also, read the enclosed instructions before completing the form. Finally, remember that when answering the questions, the "REPORT PERIOD" for which we need information about you is from JUNE, 2011 to the present. If you have already returned a report with the same report period shown above, disregard this report. If you have any questions, call 1-800-772-1213 or TTY for the hearing impaired at 1-800-325-0778.

1. a. Since JUNE, 2011 have you worked for someone or been (self-employed?) → YES [X] NO [ ]

   b. If you answered "YES" to 1.a., please complete the information below.

| Most Recent Work | WORK BEGAN Month / Year | WORK ENDED Month / Year | MONTHLY EARNINGS Dollars Only, No Cents |
|---|---|---|---|
| 1. | 4 / 2 | 3 / 3 | $ 940 |
| 2. | | | $ |
| 3. | | | $ |

Although the Update Report references "enclosed instructions," the instructions provided by the United States, and attached as an exhibit to Crangle's motion, provide no guidance whatsoever for answering question 1.b. *See* Doc. 77-2. As reflected in the above image, in filling out the Update Report, Crangle reported that he was "self-employed" during the reporting period and noted that he worked from April 2012 through March 2013, a period just shy of one year. Crangle reported "monthly earnings" for that period of $940. It is entirely plausible that someone who is self-employed might work intermittently or might have monthly earnings that fluctuate from month to month. Yet, the Update Report does not explain how a respondent should account for fluctuations in monthly earnings, if any. Nor does the Update Report provide any instruction or guidance explaining how a respondent should report non-continuous employment that may have commenced before the start of the reporting period.

Indeed, remarks by Crangle in a Work Activity Report he submitted to the Social Security Administration approximately five months after the Update Report, suggest that Crangle's earnings between April 2012 and March 2013 did, in fact, fluctuate. *See* Govt. Exh. 2 (Doc. 88-2), at p. 2. Specifically, Crangle indicated on the Work Activity Report that he "was able to decline classes if [his] condition prohibited however in 2011-2012 [he] probably averaged $1,000 a month." *Id.* Crangle further explained that in 2013 his "average earnings were less than $1,000 a month." *Id.* Thus, it appears that in answering the "monthly earnings" question on the Update Report, Crangle gave an average amount of monthly earnings earned during the time he was self-employed. Although Crangle reported on the Work Activity Report that his self-employment began in 2009, Crangle's remarks on the Work Activity Report indicating that at times he may have declined classes due to his condition also suggest that he may have worked intermittently.

### A. APPLICABLE LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) allows consideration at the pretrial stage of any defense "that the court can determine without a trial on the merits." To withstand a motion to dismiss, an indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged. *United States v. Polychron,* 841 F.2d 833, 834 (8th Cir. 1988). If the acts that are alleged in the indictment do not constitute a criminal offense, then the indictment should be dismissed. *Id.* To be legally sufficient on its face, an indictment must contain all the essential elements of the offense charged, and it must fairly inform the defendant of the crime with which he is being charged in sufficient detail so that he may prepare a defense and invoke the double jeopardy clause in any future prosecutions based on the same conduct. Fed. R. Crim. P. 7(c); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir 1988); *United States v. Bowie*, 618 F.3d 802, 817 (8th Cir. 2010); *United States v. Huggans*, 650 F. 3d 1210, 1217 (8th Cir. 2011). The test "is not whether [the indictment] could not have been made more definite and certain." *United States v. Tebeau,* 713 F.3d 955, 962 (8th Cir. 2013). Instead, the allegations in the indictment are taken as true, and "[a]n indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense . . . ." *Huggans*, 650 F.3d at 1217 (quoting *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009)).

Ordinarily, the Court's assessment is limited to the "four corners" of the indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the indictment. *See United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir.1994). However, it is permissible, and even desirable in certain circumstances, for the Court to examine the factual predicates of an indictment, particularly where material facts are undisputed, in order to ascertain whether the elements of the criminal charge can be shown. *Id.; United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir. 1991).

Here, there is no dispute that the false statements charged in Count Four are predicated on Crangle's answers to questions contained in the Update Report. Indeed, the parties have invited the Court to look beyond the "four corners" of the Second Superseding Indictment by attaching the Update Report to their respective pleadings and litigating the sufficiency (or insufficiency) of the questions contained in the Update Report. As such, the undersigned finds it both permissible and necessary to consider the Update Report and other documents submitted by the parties in assessing the sufficiency of Count Four.

### B. THE TERM "MONTHLY EARNINGS" IS NOT FUNDAMENTALLY AMBIGUOUS

Crangle argues that Count Four should be dismissed because the term "MONTHLY EARNINGS Dollars Only, No Cents" in the Update Report is "fundamentally ambiguous." *See* Doc. 77. Traditionally, "it is the province of the jury" to decide whether a defendant who stands accused of making a false statement did "in fact give a response that was literally false." *United States v. Mubayyid,* 658 F.3d 35, 61 (1st Cir. 2011) (quoting *United States v. Richardson,* 421 F.3d 17, 33 (1st Cir. 2005)). However, courts have recognized that "in the exceptional case a question may be so fundamentally ambiguous as to foreclose a jury's resolution of perjury or false statement charge because it could never be said that one intended to answer such a question untruthfully." *Mubayyid,* 658 F.3d at 61 (internal quotations omitted). To qualify as a "fundamentally ambiguous" question, the question must "lack 'a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" *United States v. Strohm,* 671 F.3d 1173, 1179 (10th Cir. 2011) (quoting *United States v. Farmer,* 137 F.3d 1265, 1269 (10th Cir. 1998)).

Thus, in *United States v. Manapat,* 928 F.2d 1097, 1101 (11th Cir. 1991), the Eleventh Circuit held a defendant's responses to two questions regarding prior convictions on a check-the-box FAA

medical certificate application form could not form the basis of a false statements charge where the questions were "buried in a list headed 'Medical History.'"[1] In so holding, the Eleventh Circuit upheld the district court's conclusion that because the layout of the form was "misleading and confusing" and "the way it is configured in the form amounts to a trick question," it would be "fundamentally unfair to base a felony prosecution on any answers that may be given by anybody" answering the form. *Id.* at 1099.

Although *Manapat* was decided at the motion to dismiss stage, nearly all of the other cases reviewed by the undersigned were decided after a trial or on evidentiary records far more developed than the record in this case.[2] Read together, the cases that have addressed this issue suggest that while this Court ***could*** decide the question of fundamental ambiguity at the motion to dismiss stage, the Court would have to find, as the court did in *Manapat,* that, on its face, the question that forms the basis of the government's false statements charges is so misleading or so excessively vague that it is "impossible to know—without guessing—the meaning of the question and whether a witness intended to make a false response." *Strohm,* 671 F.3d at 1179; *Manapat,* 928 F.2d at 1102 (affirming the district court's decision to grant defendant's motion to dismiss the indictment based on defendant's facial challenge to the FAA medical certificate application form).

A finding of "fundamental ambiguity" is the exception, not the rule. *United States v. Sarwari,* 669 F.3d 401, 407 (4th Cir. 2012) ("fundamental ambiguity is the exception, not the rule"); *Farmer,* 137 F.3d at 1269 (same). *See also United States v. Schulte,* 741 F.3d 1141, 1150 (10th Cir. 2014) ("A question is fundamentally ambiguous in narrow circumstances."); *Strohm,* 671 F.3d at 1179 (same). A

---

[1] The Eleventh Circuit upheld the district court's dismissal of the indictment on the grounds of fundamental ambiguity, but noted that it was appropriate to dismiss the case rather than submitting the case to a jury because, other than the form itself, it was not apparent that the government had any additional evidence to offer surrounding the circumstances at the time the form was completed. *Id.* at 1101 n.4.

[2] For example, Crangle relies on *United States v. Ryan,* 828 F.2d 1010 (3rd Cir. 1987), *abrogated on other grounds by United States v. Wells,* 519 U.S. 482 (1997). Although the *Ryan* court ultimately held the term "address" "does not have a meaning about which men of ordinary intellect could agree," it made that decision with the benefit of a full evidentiary record developed at trial.

7

question is not fundamentally ambiguous merely because the answerer and questioner may have different interpretations of it. *Strohm,* 671 F.3d at 1180. If a witness knowingly made a false statement, based on his interpretation of the question, it is still perjury. *Id.* A witness cannot "twist the meaning of a question in his own mind into some totally unrecognizable shape and then hide behind it by alleging its fundamental ambiguity." *Id.* (quoting *Richardson,* 421 F.3d at 35). Nor can a witness "pluck a question from its context and then plead fundamental ambiguity" by ascribing a meaning that is contrary to the question as viewed against the context of the answer given. *Id.* (quoting *Farmer,* 137 F.3d at 1269). Where a question is not, on its face, misleading or excessively vague, but is susceptible to multiple plausible interpretations and is only "arguably ambiguous," then the issue of the defendant's guilt for making a false statement is properly one for a jury. *Sarwari,* 669 F.3d at 407-08 (citing *Mubayyid,* 658 F.3d at 63).

Here, the Update Report directed the respondent to report information pertaining to the period between June 2011 and the date of the form, October 2013, a period of more than two years. In question 1.a., the Update Report asks if the respondent has worked for someone or has been self-employed "since June, 2011." If the respondent answered "yes" to question 1.a., then in question 1.b., the Update Report directs the respondent to state when "Work Began;" when "Work Ended;" and "Monthly Earnings, Dollars Only, No Cents."

In applying the foregoing legal principles to the facts of this case, I find that, as it is used in the Update Report, the term "monthly earnings" is "arguably ambiguous" because it is susceptible to multiple plausible interpretations. *See Sarwari,* 669 F.3d at 407-08. For the reasons stated above, without instructions or definitions from the Social Security Administration, someone like Crangle whose earnings may have fluctuated from month-to-month would be left to his or her own devices to determine the best way to respond to the "monthly earnings" question on the Update Report. However, the term

"monthly earnings" is not so misleading or so excessively vague that it is "impossible to know—without guessing—the meaning of the question and whether a [respondent] intended to make a false response." *Strohm,* 671 F.3d at 1179; *see also Sarwari,* 669 F.3d at 407-08 (defining "arguably ambiguous").

Crangle contends that because the Update Report "monthly earnings" question is susceptible to myriad interpretations, it is fundamentally unfair to base a felony prosecution on any answers that may be given in response to it. While this contention may have merit, a federal grand jury has returned an indictment charging Crangle with stating and representing on the Update Report that he "earned $940.00 per month . . . when, in truth and in fact, as [Crangle] well knew, . . . his monthly earnings between April 2012 and March 2013 exceeded $940.00." Doc. 64. In addition, the United States has asserted it is prepared to present evidence at trial in the form of Crangle's statement to law officials and records from the State of Missouri that will establish that Crangle's representation of his monthly earnings resulted from a deliberate false statement rather than confusion about the question being asked. *See* Doc. 88, p. 3.

In sum, the undersigned finds that, as used in the Update Report, the term "monthly earnings" is arguably ambiguous; however, it is not, on its face, fundamentally ambiguous. It may well be that once the trial judge hears all the evidence in the case he may find that, given ambiguities in the Update Report, a judgment of acquittal is appropriate. However, given the procedural posture of this case, I agree with the United States that it would inappropriate for this Court to grant Crangle's motion to dismiss at this juncture. "A motion to dismiss the indictment is not a device for a summary trial of the evidence. The sole function of this motion is to test the sufficiency of the indictment to charge an offense." *United States v. Luros,* 243 F. Supp. 160, 165 (N.D. Iowa 1965) (citing *United States v. Sampson,* 371 U.S. 75 (1962)); *see also United States v. Means,* No. 07-50003-01-KES, 2008 WL 216406, at *2 (D. S.D. Jan. 24, 2008) (citing *Luros* and collecting cases). At this stage, this Court is not "required to sift through evidence and make factual determinations" in ruling on a motion to dismiss the

9

indictment. *United States v. Yasak,* 884 F.2d 996, 1001 (7th Cir. 1989). As such, the issue of whether Crangle intentionally provided a false answer in response to the "monthly earnings" question on the Update Report is one best answered by a jury or a judge based upon a factual record that is far more developed than the record currently before the Court.

### C. THE UPDATE REPORT DOES NOT VIOLATE DUE PROCESS BY LIMITING RESPONSES TO EMPLOYMENT AFTER JUNE 2011

Crangle also contends that, because the Update Report requires a respondent to report only employment engaged in ***after*** June 2011, Count Four should be dismissed because it was impossible for Crangle to truthfully answer that his period of self-employment actually began in 2009. *See* Doc. 78. Although Crangle frames the issue in terms of a due process violation, this argument is virtually indistinguishable from the "fundamental ambiguity" issue addressed in the preceding section regarding the "monthly earnings" question. The legal analysis, therefore, is identical. Crangle's reliance on cases such as *United States v. Vesaas,* 586 F.2d 101 (8th Cir. 1978) and *United States v. Manapat,* 928 F.2d 1097 (11th Cir. 1991), is misplaced because those cases are factually distinguishable.

As discussed above, *Manapat* involved a check-the-box FAA medical certificate application form that was inherently and facially misleading largely because questions regarding defendant's criminal history that formed the basis of the false statement claim were buried in a list headed "Medical History" on a check-the-box type form. *Manapat*, 928 F.2d at 1098-99. Based on those facts, the Eleventh Circuit took the rare step of upholding pretrial dismissal of false statement charges because the way the questions were configured in the form "amount[ed] to a trick question," and it would be "fundamentally unfair to base a felony prosecution on any answers that may be given by anybody" answering the form. *Id.* at 1099. *Vesaas* did not involve pretrial dismissal of a false statement charge; with the benefit of a full evidentiary record, the Eighth Circuit vacated the trial court's judgment and

10

dismissed the indictment, holding that the indictment itself was, on its face, self-contradictory and "set[] forth as the alleged false statement the defendant's denial of a legal impossibility." 586 F.2d at 104.

The facts present in this case do not place it within the rare exception to the general rule that a jury should decide whether a defendant who stands accused of making a false statement did "in fact give a response that was literally false." *United States v. Mubayyid,* 658 F.3d 35, 61 (1st Cir. 2011) (quoting *United States v. Richardson,* 421 F.3d 17, 33 (1st Cir. 2005)). While I agree with Crangle that the Update Report is ambiguous, the ambiguity related to periods of work is similar to the ambiguity that could arise around the question of "monthly earnings" when an individual like Crangle works intermittently or had fluctuating monthly earnings. Specifically, in the absence of any instructions or guidance from the Social Security Administration, a person who works intermittently could plausibly interpret the Update Report as requiring only periods of work that occurred during the reporting period. So, for example, if Crangle began working before the reporting period in 2009, but stopped working before June 2011, and then did not resume working until April 2012, it would be entirely reasonable and plausible that he might construe the Update Report as requiring that he report only work performed after June 2011.

While this may render the Update Report arguably ambiguous, the undersigned cannot characterize the Update Report as so misleading or so excessively vague that it is "impossible to know—without guessing—the meaning of the question and whether a [respondent] intended to make a false response." *Strohm,* 671 F.3d at 1179; *see also Sarwari,* 669 F.3d at 407-08 (defining "arguably ambiguous"). The United States contends it has evidence that will establish Crangle was not confused but intended to mislead. Indeed, if Crangle worked between June 2011 (the beginning of the reporting period) and April 2012 (the date Crangle indicated he started working during the reporting period), it would be difficult to imagine how (absent an intent to mislead) Crangle (or any respondent who worked

during that time-frame) would fail to understand that the question 1.b. on the Update Report required him to report that employment. Because the question on which that charge is predicated is not so fundamentally vague or ambiguous or misleading to warrant pretrial dismissal of the charge as a matter of law, Crangle's motion to dismiss should be denied.

## II. MOTION TO DISMISS COUNTS FOUR THROUGH NINE AS DUPLICITOUS (DOC. 79)

Crangle contends Counts Four through Nine should be dismissed as duplicitous in that they appear to impermissibly charge Crangle under two separate and distinct offenses—namely offenses under 18 U.S.C. § 1001(a)(2) and (a)(3). *See* Doc. 79, p. 3-5. Crangle contends Counts Four and Five are further duplicitous because they allege more than one false statement in a single count. *Id.* at p. 5.

Duplicity occurs when an indictment charges two or more separate and distinct offenses in a single count. *See United States v. Nattier,* 127 F.3d 655, 657 (8th Cir. 1997). "The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." *Id.* (quoting *United States v. Karam,* 37 F.3d 1280, 1286 (8th Cir. 1994)). Duplicity is not, generally, fatal to an indictment. When duplicity becomes apparent before trial, "[t]he risk inherent in a duplicitous count . . . may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act." *Id.* Alternatively, duplicity can be cured by the government electing "either the count or the charge within the count upon which it will rely" at trial, *see United States v. Hood,* 210 F.3d 660, 663 (6th Cir. 2000); or, when the government presents sufficient evidence to support "both alternative offenses." *See United States v. Haber,* 251 F.3d 881, 889 (10th Cir. 2001) (holding, in dicta, that because government established both mail fraud and wire fraud at trial, any error arising from duplicitous indictment would be harmless if issue was properly before the court).

Here, upon reviewing the wording of Count Four, the undersigned acknowledges that Crangle has a point. Count Four could be construed as purporting to charge Crangle both for making false statements in violation of 18 U.S.C. § 1001(a)(2) and for making or using a false document in violation of 18 U.S.C. § 1001(a)(3). However, in responding to Crangle's motion for dismissal based on duplicity, the United States clarified that it only ever intended to charge Crangle with making a false statement. *See* Doc. 87. Given that the United States has gone on record and in its Response has, in effect, elected the charge of making false statements, even if Counts Four through Nine were duplicitous, any possible risk of prejudice to the defendant appears to have been remedied by the United States' election.

The undersigned further finds Crangle's argument that Counts Four and Five are subject to dismissal because they allege multiple false statements in one count lacks merit. As the United States pointed out in its Response, "[d]uplicity concerns are not present, however, when the underlying statute is one which merely enumerates one or more ways of committing a single offense. In that case, all of the different ways of committing that same offense may be alleged in the conjunctive in one count, and proof of any one of the enumerated methods will sustain a conviction." *United States v. Moore,* 184 F.3d 790, 793 (8th Cir. 1999) (internal citations omitted).

For the reasons stated above, Crangle's motion to dismiss Counts Four through Nine of the Second Superseding Indictment on duplicity grounds should be denied.

### III. MOTION TO DISMISS COUNTS ONE, TWO AND THREE ON STATUTE OF LIMITATIONS GROUNDS (DOC. 80)

Crangle has moved to dismiss Counts One, Two and Three of the Second Superseding Indictment on grounds that they are time-barred. *See* Doc. 80. Those counts charge Crangle with theft of government funds on January 9, 2012, February 13, 2013, and March 13, 2013, in violation of 18 U.S.C. § 641. There is no dispute between the parties that the charges were timely brought when the original indictment was filed on December 20, 2017. Instead, the parties' statute of limitations dispute centers

13

around whether the superseding indictment filed on September 27, 2018, relates back to the original indictment. Both parties cite the Eighth Circuit Court of Appeals' decision in *United States v. Yielding*, 657 F.3d 688 (8th Cir. 2011), in support of their respective positions.

In *Yielding*, the Eighth Circuit held:

> For limitations purposes, a superseding indictment filed while the original indictment is validly pending relates back to the time of filing of the original indictment if it does not substantially broaden or amend the original charges. . . . . Because the original indictment in this case was still pending at the time the second superseding indictment was filed, the second superseding indictment relates back to the time of filing of the original indictment for limitations purposes, so long as it does not substantially broaden or amend the original charges.
>
> To determine whether a superseding indictment substantially broadens or amends a pending timely indictment, we agree with other courts that it is appropriate to consider whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence. The touchstone of this analysis is whether the original indictment provided the defendant with fair notice of the subsequent charges against him.

*Yielding,* 657 F.3d at 703-04 (internal citations and quotations omitted).

Here, notwithstanding Crangle's arguments to the contrary, the Second Superseding Indictment does not "substantially broaden or amend" the charges in the original indictment. The original indictment charged Crangle with three counts of theft of government funds in violation of 18 U.S.C. § 641 (Counts 1-3) and five counts of making false statements in violation of 18 U.S.C. § 1001(a). *See* Doc. 2 (Redacted Indictment). The Second Superseding Indictment alleges Crangle violated the exact same statutes he was accused of violating in the original indictment. Amendments to Counts One through Three in the Superseding Indictment did not alter the substantive allegations—namely, that Crangle allegedly stole the sum of $1,015 in Social Security disability payments on January 9, 2013, February 13, 2013, and March 13, 2013. As such, Crangle's contention that the Second Superseding Indictment would require the government to prove different elements from the elements required in the original indictment is of dubious merit.

The addition of a false statement charge predicated on a form Crangle submitted to the Social Security Administration did not constitute a "substantial broadening" of the original charges. As noted above, in the original indictment, Crangle was charged with four counts of making false statements in a form submitted to the Veteran's Administration. The statements related to Crangle's work teaching Concealed Carry Weapons classes—work Crangle was accused of underreporting in this filings with both the VA and the Social Security Administration. Although the new false statement charge in the Second Superseding Indictment is predicated on a form filed with the Social Security Administration, this distinction is of no moment because the facts and circumstances underlying the offenses charged in both the original indictment and the Second Superseding Indictment for false statements are the same—namely, Crangle's alleged underreporting of his work teaching weapons classes. Because the facts underlying the offenses in the original indictment are the same facts underlying the offenses in the Second Superseding Indictment, the undersigned finds that the original indictment put Crangle on notice of the subsequent charges.

In sum, because "the original indictment provided the defendant with fair notice of the subsequent charges against him," the Second Superseding Indictment relates back to the original indictment; and, Crangle's motion to dismiss on statute of limitations grounds should be denied. *Yielding,* 657 F.3d at 704.

### IV. MOTION TO STRIKE SURPLASAGE FROM COUNT FOUR (DOC. 81)

Crangle moves to strike the following phrases as surplasage from Count Four of the Superseding Indictment: (1) "and that his doctor told him that he could not work"; and (2) "and he lost his accreditation to teach the Concealed Carry Weapons classes in March 2013." *See* Doc. 81.

Rule 7(d) of the Federal Rules of Criminal Procedure allows the Court, on motion of the defendant, to strike surplusage from the indictment. "A motion to strike surplusage from an indictment

15

. . . should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. Michel-Galaviz*, 415 F.3d 946, 948 (8th Cir. 2005) (quoting *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)).

In moving to strike the above-quoted lines from the Second Superseding Indictment, Crangle argues they are irrelevant to the charged offense of making a false statement because Count Four does not appear to contend that either statement is false. Crangle's conclusion is based on a strained reading of the allegations in Count Four. The United States' explanation that the language in Count Four alleges that Crangle's statement that "his doctor told him that he could not work" is false and the real reason Crangle stopped working was because he lost his accreditation is a reasonable reading of the Second Superseding Indictment. *See* Doc. 85. Because Crangle has failed to demonstrate that the allegations he seeks to strike are not relevant to the charge, his motion to strike should be denied.

V. **CONCLUSION**

For all of the foregoing reasons, Crangle's motions to dismiss Count Four on grounds the document at issue in Count Four is fundamentally ambiguous (Doc. 77) and that prosecuting Crangle based on the document at issue in Count Four violates due process (Doc. 78) should be denied; Crangle's motion to dismiss Counts Four Through Nine on duplicity grounds (Doc. 79) should be denied; Crangle's Motion To Dismiss Counts One Through Three based on the statute of limitations (Doc. 80) should be denied; and Crangle's Motion To Strike Surplasage (Doc. 81). should be denied.

/s/ Shirley P&M

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of January, 2019.